UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| MARIA MANGA,<br>　　　　　Appellant,<br><br>　　　v.<br><br>SMALL BUSINESS<br>　　ADMINISTRATION,<br>　　　　　Agency. | DOCKET NUMBER<br>PH-0752-17-0096-I-1<br><br><br>DATE:  July 10, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Kevin Zieleniewski, Esquire, Washington, D.C., for the appellant.

Michael D. Hall, Sr., Riverdale, Maryland for the appellant.

Claudine Landry, Esquire, Richard Lloyd Peterson, Esquire, and
　　Ashley E. Obando, Esquire, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

## FINAL ORDER

¶1　　The appellant has filed a petition for review of the initial decision, which sustained her removal.  For the reasons discussed below, we GRANT the

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

appellant's petition for review and REVERSE the administrative judge's decision to sustain the removal action. The appellant's removal is REVERSED. We clarify the correct analytical framework for the appellant's Title VII affirmative defenses, and we FIND that the appellant proved her affirmative defenses of disability discrimination based on disparate treatment and failure to accommodate.

## BACKGROUND

¶2      The appellant worked as a GS-1101-12 Business Opportunity Specialist in the agency's Baltimore District Office. Initial Appeal File (IAF), Tab 1 at 1, Tab 11 at 4, Tab 28 at 58. On October 29, 2015, the appellant collapsed at work and was hospitalized. IAF, Tab 6 at 40. She spent a period at the hospital, then transferred to a rehabilitation facility, and was subsequently released to complete outpatient physical therapy several times a week. *Id.* at 108-19, 212-20. Her communication with her supervisor was spotty during this time, but she submitted leave requests and medical documentation in December 2015 showing that she had experienced, among other things, "[m]uscle weakness, balance and walking problems," and her medical provider indicated that she would remain incapacitated until December 28, 2015. *Id.* at 108-19, 212-20, 226-234. The agency granted the appellant sick leave through December 25, 2015, as well as an additional week of annual leave that the appellant had requested, ending on January 4, 2016. *Id.* at 58-59. The appellant, however, never returned to work.

¶3      The appellant's December 2015 medical documentation also stated that when she did return to work, it was "absolutely medically necessary" to reassign her to the agency's Washington, D.C. District Office because of the length of her commute to the Baltimore District Office. *Id.* at 214. The agency requested clarification as to whether the appellant was requesting a reasonable accommodation and asked her to provide additional information. *Id.* at 172-73. The appellant provided a January 6, 2016 letter from her physician, Dr. G.,

stating that the appellant was "requesting a reasonable work accommodation" and explaining that she was still experiencing limited mobility and required assistive devices to move about; that the length of her commute to the Baltimore District Office had caused her to lose sleep and may have triggered her collapse and ensuing medical condition, of which the working diagnosis was "conversion reaction attributable to an untenable work situation and sleep deprivation;" and that she was capable of performing her job functions if she did not have an onerous commute. *Id.* at 162. In mid-January 2016, the agency informed the appellant that it wished to send her request to the Federal Occupational Health Service (FOH) to assist in recommending accommodations and requested that she provide specific additional documentation to provide to FOH, but the appellant did not respond. *Id.* at 158-59.

¶4 In mid-February 2016, the agency informed the appellant that it was closing her reasonable accommodation case because she had not submitted the FOH paperwork, and it was unable to determine whether she had a disability or the specific accommodation she was requesting. *Id.* at 134-35. The letter provided her with an opportunity to request reconsideration of the decision, but she did not respond. *Id.* at 134. In early March 2016, the agency informed the appellant's representative that it did not believe that Dr. G.'s January 6, 2016 letter supported her absences but that it was still amenable to discussing reasonable accommodation. *Id.* at 90-96. The appellant subsequently requested accommodation in the form of office furniture, to which the agency responded that it had already provided the requested furniture and that the appellant should respond if she was seeking additional accommodation. *Id.* at 72, 74-75, 88. The appellant again did not respond.

¶5 Throughout this period, the appellant had submitted additional requests for leave from January through March 2016, but the agency told her numerous times that it did not find that her medical documentation restricted her from working in the Baltimore District Office and to provide additional information to this effect.

*Id.* at 90-96, 103-105, 128, 137, 156, 164. Per the agency, the appellant did not do so, and in early March 2016 the agency notified her that it was documenting her status from early January to early March 2016 as absent without leave (AWOL). *Id.* at 81-83. The agency continued to carry her in an AWOL status and eventually proposed her removal in late April 2016 for AWOL and failure to follow leave procedures (two specifications) from January 4, 2016, until April 27, 2016. *Id.* at 58-63. The appellant replied to the notice, and on November 2, 2016, the agency issued a decision sustaining her removal. *Id.* at 40-45, 51-52.

¶6 The appellant filed a timely appeal with the Board challenging her removal and raising affirmative defenses of disparate treatment on the bases of age, national origin, sex, and disability; retaliation for prior EEO activity; and failure to provide reasonable accommodation for her disability. IAF, Tab 1 at 7-8, Tab 52 at 3. After holding the requested hearing, the administrative judge issued an initial decision affirming the agency's action. IAF, Tab 62, Initial Decision (ID) at 1. The administrative judge found that the agency proved its AWOL charge and the second specification of the failure to follow leave procedures charge, ID at 16-20, the removal promoted the efficiency of the service, ID at 20-22, and the appellant did not prove her affirmative defenses, ID at 22-24.

¶7 The appellant filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency filed a response, and the appellant filed a reply. PFR File, Tabs 3, 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶8 On petition for review, the appellant argues that the initial decision should be reversed because the administrative judge did not provide reasoning based on case law, his ruling was "without regard [for] the letter of the law and the spirit of the law," and the decision lacked fairness and empathy. PFR File, Tab 1 at 1-2. Although the appellant does not identify any specific error in the initial decision, she cites numerous statutes, Board decisions, and Equal Employment Opportunity

Commission (EEOC) guidance in support of her argument that the agency subjected her to discrimination, retaliation, and harassment, and violated her due process rights. *Id.* at 3. For the reasons discussed below, we agree with the appellant that the removal action must be reversed.

<u>The agency's AWOL charge cannot be sustained because the appellant provided administratively acceptable evidence that she was incapacitated for duty at her duty station.</u>

¶9 To prove a charge of AWOL, an agency must show that the employee was absent without authorization and, if the employee requested leave, that the agency properly denied the request. *Wilson v. Small Business Administration*, 2024 MSPB 3, ¶ 7. An agency may require a medical certificate to substantiate a request for sick leave of more than 3 workdays. 5 C.F.R. § 630.405(a). A charge of AWOL will not be sustained if the appellant presents administratively acceptable evidence that she was incapacitated for duty during the relevant period and if she has sufficient sick leave to cover the period of absence. *Valenzuela v. Department of the Army*, 107 M.S.P.R. 549, ¶ 9 (2007); *see* 5 C.F.R. § 630.405(b) (indicating that an agency may deny a request for sick leave when an employee fails to provide properly requested administratively acceptable evidence). An agency may find documentation insufficient if it does not provide the requested information regarding the nature of the appellant's illness and the effect her illness had on her ability to work. *Rison v. Department of the Navy*, 23 M.S.P.R. 118, 123 (1984), *aff'd*, 765 F.2d 162 (Fed. Cir. 1985) (Table).

¶10 In this case, the appellant does not dispute that she was absent from work between January 4, 2016, and April 27, 2016. ID at 17. However, as noted above, the record shows that the appellant requested both sick and annual leave from January 4, 2016, going forward and that the agency denied her requests. ID at 17; IAF, Tab 6 at 90-96, 103-105, 128, 156, 164. Therefore, the critical question is whether the agency's denials of her leave requests were proper.

¶11     In the initial decision, the administrative judge found that the agency properly denied the appellant's leave requests from January 4, 2016, onward because she did not submit any medical documentation stating that she was incapacitated from working and that, instead, the appellant's medical information confirmed that she had "sufficiently recovered" by December 28, 2015. ID at 17. Although the administrative judge noted that the appellant's medical records discussed allowing her to work out of the agency's Washington, D.C. District Office, he found that the appellant's physician, Dr. G., failed to identify a medical condition that established a clear medical need for her to do so, or that otherwise prevented her from being able to perform her job duties in the Baltimore District Office. ID at 17-18. The administrative judge also concluded that the appellant's absences were not excused under the Family and Medical Leave Act of 1993 (FMLA) in part because she did not prove that she suffered from a serious health condition after December 2015 that prevented her from performing her job duties. ID at 18-19.

¶12     However, we find that the appellant's medical documentation clearly explained that she was incapacitated for duty at the Baltimore District Office during this time. Dr. G.'s January 6, 2016 letter stated that the appellant was likely suffering from "conversion reaction attributable to an untenable work situation and sleep deprivation," which limited major life activities like mobility, ambulation, and sleep. IAF, Tab 6 at 162. He explained that, although at the time of his letter many of the appellant's symptoms had improved and he believed she was capable of doing her job out of the agency's Washington, D.C. District Office, the appellant would exacerbate her symptoms, leading to a relapse, if she were to resume her long commute to Baltimore. *Id.* Dr. G., in essence, found that the appellant's lengthy commute from her home in Washinton, D.C. to the agency's Baltimore District Office had caused her sleep deprivation, which in turn exacerbated her conversion disorder, but that she could probably work from the agency's Washington, D.C. office instead. *Id.* The administrative judge's

finding that Dr. G. "failed to identify an existing medical condition" that required the appellant to work out of the Washington, D.C. office, and the appellant's supervisor's contention that Dr. G.'s letter did not state that she was "unable to report to work," are incorrect given this explicit discussion. ID at 18; IAF, Tab 6 at 126, 162. Additionally, in a letter dated March 8, 2016, Dr. G. reiterated his opinion that the appellant "could be working in the D.C. office" but that the accommodations he had recommended were "medically necessary." *Id.* at 88.

¶13 Consequently, we disagree with the administrative judge and find that the appellant presented administratively acceptable evidence of her incapacity to work out of the agency's Baltimore District Office. ID at 162; *see Atchley v. Department of the Army*, 46 M.S.P.R. 297, 303 (1990) (explaining that if the doctor's diagnosis, determination of the appellant's work restrictions, and understanding of the appellant's condition were accurate, it would "logically follow that the appellant was incapacitated for duty" and holding that the appellant submitted administratively acceptable evidence of incapacity). The appellant provided a letter from a licensed physician, with whom she had a longstanding relationship, that contained a medical diagnosis, a description of her symptoms, and an explanation of how this condition prevented her from reporting to her duty station in Baltimore. *Compare Lawley v. Department of the Treasury*, 84 M.S.P.R. 253, ¶¶ 22-23 (1999) (finding that the appellant's medical documentation, which stated that she required time off because of emotional stress that was work related and due to problems with her supervisor, failed to indicate that she was incapacitated for duty), *with Patterson v. Department of the Air Force*, 74 M.S.P.R. 648, 652-58 (1997) (finding the appellant's detailed medical evidence, which indicated the reasons why she was completely unable to work due to problems with her supervisors, a diagnosis, and a prognosis of when she could return to work, established that she was incapacitated for duty).

¶14 As mentioned above, to overcome a charge of AWOL, an appellant must generally present administratively acceptable evidence of incapacitation for the

relevant period *and* have sufficient sick leave to cover the period of absence. *Valenzuela*, 107 M.S.P.R. 549, ¶ 9; 5 C.F.R. § 630.401. Here, the record indicates that the appellant only had enough available sick leave to cover her absences through the end of February 2016. IAF, Tab 6 at 137. The appellant also requested annual leave for this period, but the agency denied her request because her absence was having an impact on the distribution of work in the office. *Id.* at 92, 103-05. Although the agency informed the appellant of what she needed to do to invoke the FMLA to use annual leave in place of sick leave, it does not appear that the appellant ever invoked the FMLA or requested leave without pay (LWOP) for the period covered by the AWOL charge. *Id.* at 59, 91-92, 98, 103-05, 128, 138, 156, 164. Nevertheless, we note that authorization of LWOP is within the agency's discretion. *Oates v. Department of Labor*, 105 M.S.P.R. 10, ¶ 11 (2007). Further, here, the agency specifically denied the appellant's leave requests because it erroneously concluded that her medical documentation did not support her incapacitation from working at the Baltimore District Office. IAF, Tab 6 at 91-92, 95. In fact, it explicitly informed her that it "reserve[d] the right to change her leave if the medical documentation supports her incapacitation." *Id.* at 90. Had the agency properly acknowledged that the appellant's medical documentation supported her incapacitation from working out of the Baltimore District Office and as discussed further below, properly acknowledged and engaged with her request for a reasonable accommodation, leave would not have been an issue. Thus, the agency's denial of leave, and handling of the appellant's situation generally, was not reasonable under the circumstances.

¶15     Accordingly, the AWOL charge may not be sustained.

<u>The failure to follow leave procedures charge cannot be sustained.</u>

¶16     As noted above, the agency also charged the appellant with failure to follow leave procedures (two specifications). IAF, Tab 6 at 60. Agencies may take disciplinary action against an employee based on her failure to follow

leave-requesting procedures and her use of unscheduled leave provided she is clearly on notice of such requirements and the likelihood of discipline for continued failure to comply. *Valenzuela*, 107 M.S.P.R. 549, ¶ 9. In the initial decision, the administrative judge only sustained the second specification of this charge. ID at 19-20. On review, the agency does not challenge his findings as to the first specification, and thus, only the second specification is at issue. *See* PFR File, Tab 3.

¶17 Under specification 2, the agency alleged that the appellant failed to follow leave procedures because she "failed to provide medical certification, signed by a registered practicing physician or other practitioner, certifying [her] incapacitation." IAF, Tab 6 at 60. As explained above in connection with the AWOL charge, this allegation is demonstrably untrue. As a result, this charge cannot be sustained.

¶18 Because neither charge can be sustained, the appellant's removal must be reversed.

<u>We agree with the administrative judge that the appellant did not prove her affirmative defenses of disparate treatment on the basis of age, national origin, or sex.</u>

¶19 After the initial decision was issued, the Board clarified the proper analytical framework for adjudicating age, national origin, and sex discrimination claims under Title VII. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 21-25. Under *Pridgen*, the appellant bears the burden of proving by preponderant evidence that her age, national origin, or sex was a motivating factor in her removal. *Pridgen*, 2022 MSPB 31, ¶ 21. A finding that prohibited discrimination played "any part" in the contested action is the same as a finding of "motivating factor." *Id.* In the initial decision, the administrative judge found that the appellant failed to present any evidence supporting her claims of disparate treatment on the basis of age, national origin, or sex. ID

at 22-23. We agree and find that the appellant did not show that her age, national origin, or sex were motivating factors in her removal. *Id.*

<u>We agree that the appellant did not prove her affirmative defense of retaliation for protected EEO activity.</u>

¶20    In finding that the appellant did not show that the agency retaliated against her for her prior EEO activity, the administrative judge applied the standard set forth in *Cloonan v. U.S. Postal Service*, 65 M.S.P.R. 1, 4 (1994), which requires, among other things, that the appellant establish a "genuine causal connection" between the alleged retaliation and the contested employment action. ID at 23-24. However, after the initial decision was issued, the Board also clarified the analytical framework for addressing claims of EEO retaliation. In *Pridgen*, the Board held that claims of retaliation for opposing discrimination in violation of Title VII are analyzed under the same framework used for Title VII discrimination claims, as set forth above. *Pridgen*, 2022 MSPB 31, ¶ 30; *see also Desjardin v. U.S. Postal Service*, 2023 MSPB 6, ¶ 32.

¶21    Here, analyzing the appellant's claim under the correct evidentiary standards and framework, we find that the administrative judge properly concluded that the appellant did not prove her affirmative defense of retaliation for prior EEO activity. The appellant did not show that the officials involved in the removal action were aware of her prior EEO activity or that any agency employee with knowledge of her EEO activity influenced the officials' decisions. *See* ID at 23-24. Our review of the record reflects that the appellant did not present any evidence other than conclusory allegations in support of her retaliation claim. Thus, the appellant did not establish that her prior EEO activity was a motivating factor in her removal.[2]

---

[2] Because we discern no error with the administrative judge's motivating factor analysis or conclusions regarding the appellant's above-discussed discrimination and retaliation claims, it is unnecessary for us to address whether discrimination or retaliation on these bases were a but-for cause of the removal action. *See Pridgen*, 2022 MSPB 31, ¶¶ 20-25.

<u>The appellant is a qualified individual with a disability.</u>

¶22     As noted above, the appellant also alleged that the agency subjected her to disparate treatment on the basis of her disabilities, which she identified as depression, stress, and anxiety, and that the agency discriminated against her by failing to accommodate her disabilities.  IAF, Tab 52 at 3.  With regard to these issues, the administrative judge found that although the appellant "had been experiencing some mobility issues early on," she did not establish that she had a disability at any point in time between December 28, 2015 and the date of her removal, and thus that she did not show that she was an individual with a disability.  ID at 23.  He therefore found that she did not establish either of her claims.  ID at 23-24.  As discussed below, we disagree.

¶23     The Americans with Disabilities Act (ADA)[3] provides that it is illegal for an employer to "discriminate against a qualified individual on the basis of disability."  42 U.S.C. § 12112(a); *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶ 28.  To prove disability discrimination, an appellant must first establish that she is an individual with a disability.  *Doe v. Pension Benefit Guaranty Corporation*, 117 M.S.P.R. 579, ¶ 38 (2012).  To prove that an appellant is an individual with a disability, she must show that she:  (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment.  42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g).  Major life activities include sleeping, walking, and standing.  29 C.F.R. § 1630.2(i)(1)(i).  The impairment must substantially limit the ability of the individual to perform a particular major life activity as compared to most people in the general

---

[3] The Board adjudicates claims of disability discrimination raised in connection with an otherwise appealable action under the substantive standards of section 501 of the Rehabilitation Act.  *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶ 28.  The standards under the ADA, as amended by the Americans with Disabilities Act Amendments Act of 2008, have been incorporated into the Rehabilitation Act, and the Board applies them to determine whether there has been a Rehabilitation Act violation.  *Id*.

population. 29 C.F.R. § 1630.2(j)(1)(ii). "Substantially limits" is not meant to be a demanding standard, 29 C.F.R. § 1630.2(j)(1)(i), and the definition of disability is to be "construed in favor of broad coverage of individuals," to the maximum extent permitted by the terms of the ADA, as amended by the ADA Amendments Act of 2008 (ADAAA), 42 U.S.C. § 12102(4)(A); 29 C.F.R. § 1630.1(c)(4).

¶24    In this case, the appellant alleged that stress was the cause of her October 29, 2015 collapse at work and ensuing hospitalization, as well as the period of weakness and limited mobility thereafter. IAF, Tab 41 at 8, 82, Tab 59, Hearing Compact Disc (HCD) at 4:21 (testimony of the appellant). As discussed above, Dr. G. observed in December 2015 that the appellant was experiencing limited mobility in her lower extremities and would remain incapacitated until December 28, 2015. IAF, Tab 6 at 212-20. In his January 6, 2016 letter stating that the appellant was requesting an accommodation, Dr. G. specifically discussed the appellant's continued restricted mobility, explaining that she had limited mobility and strength in her lower extremities, required "assistive devices for ambulation," and that her condition was improving but "far from baseline." *Id.* at 162. Dr. G. explained that although the appellant's condition had been difficult to diagnose, the "working diagnosis" for her lower extremity weakness was conversion reaction attributable to an untenable work situation and sleep deprivation, as it related to her onerous commute to Baltimore. *Id.* In his March 8, 2016 letter, Dr. G. wrote that the appellant was still having low back pain and that his previously mentioned accommodations were "medically necessary." *Id.* at 88.

¶25    Under the broad coverage contemplated by the ADAAA, we find that the documentation the appellant provided was sufficient to conclude that she had a physical impairment that substantially limited at least one major life activity. *See* 29 C.F.R. § 1630.2(h) (including any physiological or mental or psychological condition in the definition of a physical impairment); 29 C.F.R. § 1630.2(i)(1)(i)

(including walking and standing as major life activities). Although the administrative judge focused on Dr. G.'s March 8, 2016 comment that the appellant had "some continued low back pain," her earlier medical documentation as described above indeed shows that her condition was sufficiently severe, for a period of at least 2 months, to conclude that she was disabled at the time she requested reasonable accommodation. IAF, Tab 6 at 88, 162, 212-20. To this end, the regulations explicitly state that "transitory and minor" conditions are not excluded from coverage under this definition of disability.[4] 29 C.F.R. § 1630.2(j)(ix). As such, we conclude that the appellant was an individual with a disability.[5]

¶26    Both a claim of disability discrimination based on an individual's status as disabled and a claim based on the agency's failure to reasonably accommodate that disability require that the individual be "qualified." *Haas*, 2022 MSPB 36, ¶ 28. To be a qualified individual with a disability, the appellant must show that she can "perform the essential functions of the . . . position that [she] holds or desires" with or without reasonable accommodation. 42 U.S.C. § 12111(8). In this case, we also conclude that the appellant was a qualified individual with a disability because her medical documentation does not suggest, nor has either party alleged, that she could not perform the essential functions of her position with or without reasonable accommodation.[6] *See* IAF, Tab 6 at 88, 162. Indeed,

---

[4] In the initial decision, the administrative judge should have, at a minimum, evaluated whether the appellant met one of the remaining definitions of disability. To establish disability discrimination on the basis of a failure to accommodate, the appellant must establish coverage under the "actual disability" or the "record of" prongs of the definition of disability, whereas she need only establish coverage under the "regarded as" prong of the definition of disability in order to prove a claim of disparate treatment discrimination. 29 C.F.R. § 1630.2(g)(1)-(3).

[5] Even if the agency was unfamiliar with the appellant's condition, conversion disorder, it could have sought additional information about the condition. In any event, Dr. G.'s notes were clear about its impact on the appellant.

[6] Because the record is fully developed as to the appellant's disability discrimination affirmative defenses, the Board can analyze the claims without remand. *Forte v. Department of the Navy*, 123 M.S.P.R. 124, ¶ 27 (2016).

Dr. G. repeatedly indicated that he believed that the appellant could perform her job functions without an onerous commute. *Id.* at 162. The appellant testified at the hearing that Dr. G. said she was still able to work and that she wanted to work. HCD at 5:12 (testimony of the appellant). The agency does not argue or point to anything in the record that refutes this evidence. In fact, the appellant's supervisor indicated at the hearing that he believed that the appellant could perform the essential functions of her position. HCD at 48:14 (testimony of the appellant's supervisor). The deciding official also acknowledged that the appellant was capable of working. HCD at 1:56:50 (testimony of the deciding official). Accordingly, we find that the appellant is a qualified individual with a disability.

<u>The agency failed to reasonably accommodate the appellant.</u>

¶27    Because the administrative judge found that the appellant was not an individual with a disability, he concluded that she did not prove that the agency improperly denied her a reasonable accommodation. ID at 24. To establish disability discrimination based on a failure to accommodate claim, an employee must show that: (1) she is an individual with a disability, as defined by 29 C.F.R. § 1630.2(g); (2) she is a qualified individual with a disability, as defined by 29 C.F.R. § 1630.2(m); and (3) the agency failed to provide a reasonable accommodation. *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 (2015). As explained above, we find that the appellant proved that she is a qualified individual with a disability. Therefore, the relevant question here is whether the agency failed to provide the appellant with reasonable accommodation.

¶28    An agency is required to make reasonable accommodation to the known physical and mental limitations of an otherwise qualified individual with a disability unless the agency can show that accommodation would cause an undue hardship on its business operations. 29 C.F.R. § 1630.9(a); *see Miller*, 121 M.S.P.R. 189, ¶ 13. Reasonable accommodation includes modifications to

the manner in which a position is customarily performed in order to enable a qualified individual with a disability to perform the essential job functions. *Miller*, 121 M.S.P.R. 189, ¶ 13; EEOC Notice No. 915.002, *Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act* (Oct. 17, 2002), http://www.eeoc.gov/policy/ docs/accommodation.html (last visited July 9, 2024).

¶29 Once an appellant has requested an accommodation, the employer must engage in an interactive process to determine an appropriate accommodation. *Sanchez v. Department of Energy*, 117 M.S.P.R. 155, ¶ 17 (2011). "The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the individual with a disability." 29 C.F.R. part 1630, appendix, § 1630.9. In this case, the record is clear that the agency did not properly engage in the interactive process. Dr. G.'s January 6, 2016 letter was sufficient to apprise the agency of the appellant's disability, contained an explicit request for reasonable accommodation, and was more than adequate for the agency to move to the next step of the interactive process. *See* IAF, Tab 6 at 162. It is well-established that a request for telecommuting or a shorter commuting time because of a disability triggers an agency's responsibility under the Rehabilitation Act. *See, e.g.*, *Barney G. v. Social Security Administration*, EEOC Appeal No. 2021000802, 2022 WL 4546523, at *8 n.6 (Sept. 12, 2022). Although, as the administrative judge pointed out, the appellant did not respond to the agency's subsequent request to submit her case to the FOH, notably, the agency's request did not state that the agency needed further information or that the appellant's request would be denied if the matter were not submitted to the FOH. ID at 24; IAF, Tab 6 at 158.

¶30 In the agency's February 6, 2016 letter closing the appellant's reasonable accommodation case, it specified that it was denying her request because she had not informed her supervisor "verbally or in writing what specific reasonable accommodation [she was] requesting," and because her medical documentation

did not "identify" her medical condition. IAF, Tab 6 at 134. As explained above, these justifications are clearly incorrect. Although the agency also later told the appellant that it was still open to reasonable accommodation discussions, it still maintained that she needed to submit additional information supporting her request. *Id.* at 91. However, the EEOC's Enforcement Guidance states that an employer cannot ask for documentation when the individual has already provided the employer with sufficient information to substantiate that she has a disability and needs the reasonable accommodation requested. *See* EEOC Notice No. 915.002, *Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act*, Question 8 (Oct. 17, 2002), http://www.eeoc.gov/policy/docs/accommodation.html (last visited July 9, 2024). We therefore find that the agency did not properly engage in the interactive process.

¶31        Nevertheless, a failure to engage in the interactive process alone does not violate the Rehabilitation Act; rather, the appellant must show that this omission resulted in a failure to provide reasonable accommodation. *Sanchez*, 117 M.S.P.R. 155, ¶ 18. In other words, the appellant must establish that a reasonable accommodation existed. *See Clemens v. Department of the Army*, 120 M.S.P.R. 616, ¶ 17 (2014) (finding that an appellant's mere assertion that the agency could have allowed him to use specific software was insufficient to establish his burden that an accommodation existed and was reasonable); *see also Humphrey v. Memorial Hospitals Association*, 239 F.3d 1128, 1137-39 (9th Cir. 2001) (finding an employer liable for denial of reasonable accommodation when it failed to engage in the interactive process which caused the denial of an effective accommodation).

¶32        Here, the appellant repeatedly identified what she believed to be an effective accommodation, i.e., to be reassigned to the Washington, D.C. District Office. IAF, Tab 6 at 162, 214; HCD (testimony of the appellant). As Dr. G. specifically explained in his January 6 letter, he believed that an accommodation

to help the appellant perform her work duties was one where "she did not have an onerous commute." IAF, Tab 6 at 162. He explained that "the major cause of [the appellant's] current condition related to her being transferred" to a new city (Baltimore), resulting in "significant and dangerous sleep deprivation" that "adversely affect[ed] her performance," but that he believed she would be capable of doing her job out of the agency's Washington, D.C. office, where she would not have a long commute. *Id.* Based on the record before us, it appears that a reassignment to the Washington, D.C. District Office would have been an effective accommodation, especially given that the appellant had previously worked out of the Washington D.C. District Office without issue. We acknowledge, however, that she did not identify any available vacancies in the Washington, D.C. District Office. *Clemens*, 120 M.S.P.R. 616, ¶ 17.

¶33 Nonetheless, Dr. G. specified that an effective accommodation for the appellant was one where "*she did not have an onerous commute*." IAF, Tab 6 at 162 (emphasis added). Although the record indicates that the appellant did not specifically request telework as a reasonable accommodation, she testified at length at the hearing that she had previously requested to telework, at least in part due to her commute, and that she also wanted to work from home during the disputed period. HCD at 4:04 (testimony of the appellant). The appellant testified that most of her colleagues teleworked and that she could do the same work that she was doing in the office from her home. HCD at 4:12 (testimony of the appellant); *see also* IAF, Tab 41 at 8. Although the deciding official testified that telework is granted at a manager's discretion and that typically employees do not telework until they have been employed with the agency for 1 year, the appellant had been working at the Baltimore District Office for over a year at the time of her medical incident. HCD at 1:45 (testimony of the deciding official). Additionally, while the appellant testified that her supervisor told her that telework is a "privilege," and the agency's hearing questioning suggests that the appellant may have told her supervisor at one point in time that she did not have a

reliable internet connection, there is no testimony or other evidence in the record indicating that telework was unavailable to the appellant. HCD at 4:11, 5:14:15 (testimony of the appellant). And telework, like the appellant's request to change duty stations, certainly would have accommodated her ambulation, sleep, and commute issues. *See* IAF, Tab 6 at 162.

¶34     In sum, although we cannot conclusively say that a reassignment to the Washington, D.C. District Office would have been an effective and reasonable accommodation, we find that had the agency correctly handled the appellant's medical documentation and properly engaged in an interactive reasonable accommodation process, that telework, at the least, would have been an effective accommodation such that the appellant would not have an onerous commute.[7] The agency, however, failed to properly engage in the interactive process and thus did not provide the appellant with a reasonable accommodation. Accordingly, we find that the appellant proved her claim of disability discrimination on the basis of a failure to reasonably accommodate.

The appellant proved that disability discrimination was a but-for cause of her removal.

¶35     As noted above, the appellant also raised a claim of status-based disability discrimination. ID at 23. In *Pridgen*, 2022 MSPB 31, ¶ 42, the Board clarified that disparate treatment disability discrimination claims should be analyzed under the same analytical framework as disparate treatment discrimination claims under Title VII. Thus, consistent with the above, the appellant bears the burden of proving by preponderant evidence that her disability was a motivating factor in the removal action. *Pridgen*, 2022 MSPB 31, ¶ 40. However, to obtain the full measure of relief available under the statute, the appellant must show that such

---

[7] Additionally, extending the appellant's leave could have also been a reasonable and effective accommodation, which the agency refused to do. *See* EEOC Notice No. 915.002, *Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act* (Oct. 17, 2002), http://www.eeoc.gov/policy/docs/accommodation.html (last visited July 9, 2024).

discrimination was a but-for cause of the employment outcome. *Id*., ¶¶ 20-22, 42. The but-for standard generally requires a showing that the harm would not have occurred in the absence of—that is, but for—the discriminatory conduct. *Wilson*, 2024 MSPB 3, ¶ 15. The methods by which an appellant may prove a claim of discrimination or retaliation are: (1) direct evidence; (2) circumstantial evidence, which may include (a) evidence of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn," also known as "convincing mosaic;" (b) comparator evidence, consisting of "evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic . . . on which an employer is forbidden to base a difference in treatment received systematically better treatment; (c) evidence that the agency's stated reason for its action is "unworthy of belief, a mere pretext for discrimination, (i.e., the burden-shifting standard under *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-04 (1973)); and (3) some combination of direct and indirect evidence. *Pridgen*, 2022 MSPB 31, ¶ 24.

¶36    In cases that involve at least some circumstantial evidence, the Board has set forth two methods by which an appellant may establish but-for causation, i.e., the pretext framework or the mixed-motive framework. *Wilson*, 2024 MSPB 3, ¶¶ 15-19. Under the pretext framework, an appellant may use the *McDonnell Douglas* evidentiary framework to establish that discrimination or retaliation was a but-for cause of the challenged personnel action by showing that the employer's reason is pretextual, or by showing that it is more likely than not that the agency was motivated by discrimination or retaliation. *Id*., ¶¶ 16-17. Alternatively, under the mixed-motive framework, if an appellant proves motivating factor and the agency does not prove by preponderant evidence that it would have taken the same action in the absence of discrimination, the appellant has established but-for causation. *Id*., ¶ 18. An appellant may choose to show but-for causation under

the pretext framework or under the mixed-motive framework, or by proceeding under both theories simultaneously.  *Id*., ¶ 19.

¶37    Upon review of the record, we find that disability discrimination was a but-for cause of the removal action.  The record is replete with evidence indicating that the agency took its action against the appellant because of her medical condition—or rather, its refusal to properly acknowledge her medical condition and handle her accommodation request.  First, both the notice of proposed removal and the removal decision letters signal that the agency improperly considered the appellant's disability in taking its action against her.  For example, the appellant's supervisor states in the notice of proposed removal that he considered Dr. G.'s statement that the appellant "could be working in the D.C. office," but stressed the appellant does not "work in the D.C. Office; [she] work[s] in the Baltimore District Office."  IAF, Tab 6 at 61.  He also stated that it was "evident" based on his reading of the appellant's medical documentation that she "had the ability to report to the Baltimore District Office."  *Id.*  Additionally, in discussing the appellant's potential for rehabilitation, the appellant's supervisor claimed, "[t]hrough your actions, you have removed yourself from the office in an attempt to get what you want, rather than work through the proper administrative channels."  *Id.* at 62.  These comments suggest outright disbelief of Dr. G.'s conclusion that the appellant was medically unable to work out of the Baltimore District Office and that she required reasonable accommodation.

¶38    In the appellant's response to the notice of proposed removal, she reiterated that she was "still medically unable to continue to work in the Baltimore office" but that she could return to work in the Washington, D.C. District Office.  *Id.* at 52.  However, in the decision letter, the deciding official stated that he found that the appellant has no potential for rehabilitation because "[y]our written response and actions do not indicate any plan to return to work in the Baltimore District Office.  I can only conclude that you refuse to work in the Baltimore District Office and won't return to work until you get your way, regardless of

what the medical documentation states." *Id.* at 43. Given Dr. G.'s clear and unambiguous explanation regarding why the appellant's medical conditions prevented her from working at the Baltimore office, these comments about the appellant's "refusal" to return to Baltimore until she "gets her way" certainly indicate disability discrimination.

¶39      This conclusion is also supported by the hearing testimony. At the hearing, the appellant's supervisor testified that in issuing the notice of proposed removal, he considered that the appellant "didn't have any intention of returning to the Baltimore District Office" and that he believed that her medical documentation did not support her being unable to return to Baltimore. HCD at 41:00 (testimony of the appellant's supervisor). He also testified that he determined removal to be the appropriate penalty in this case because the issue with the appellant "kept coming back to that she wanted to work in the D.C. office." HCD at 54:30 (testimony of the appellant's supervisor). Similarly, the deciding official testified that he found the nature of the appellant's offense very serious in part because she did not submit "adequate medical information," and that he reconciled sustaining the appellant's removal even though she did not have any past disciplinary history in part because of "the lack of substantive sufficient evidence that she couldn't return to work." HCD at 2:07, 2:11 (testimony of the deciding official). The deciding official also testified that he considered the appellant's potential for rehabilitation and, at the time he sustained her removal, did not think that the appellant would return to the Baltimore District Office "voluntarily." HCD at 2:17:30 (testimony of the deciding official). Again, we find that this testimony is evidence that the proposing and deciding officials considered the appellant's medical condition in deciding to remove her. Specifically, this evidence shows that the proposing and deciding officials refused to acknowledge that the appellant's medical evidence stated that she had a disabling medical condition and required a reasonable accommodation in proposing and effectuating her removal. Put another way, the record shows that the agency would not have

removed the appellant had it properly acknowledged her medical condition and granted her leave requests or otherwise appropriately engaged in the interactive process with her.

¶40 Consequently, we find that the appellant proved her affirmative defenses of disability discrimination based on disparate treatment and a failure to provide a reasonable accommodation.

## ORDER

¶41 We ORDER the agency to cancel the removal. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶42 We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶43 We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶44 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not

fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶45     For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING
## YOUR RIGHT TO REQUEST
## ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT
## REGARDING YOUR RIGHT TO REQUEST
## COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your compensatory damages, including pecuniary losses, future pecuniary losses, and nonpecuniary losses, such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. To be paid, you must meet the requirements set out at 42 U.S.C. § 1981a. The regulations may be found at 5 C.F.R. §§ 1201.201,

1201.202, and 1201.204. If you believe you meet these requirements, you must file a motion for compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[8]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court

---

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>.** This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[9] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                  _____
                                Gina K. Grippando
                                Clerk of the Board

Washington, D.C.

**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g., TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).

**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion. Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions (if applicable).
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE: If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.